Martin et ux., Appellants, *v.* Steen et al.

264

Argued November 15, 1932.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*J. Andrew Frantz,* for appellants.

*K. L. Shirk,* for J. Parke Steen, appellee.

G. T. *Hambright* of *Windolph & Mueller,* and with him *John E. Malone,* for Conestoga Transportation Company, appellee.

OPINION BY PARKER, J., July 14, 1933:

David J. Martin and Emma M. Martin, his wife, brought this action in trespass against J. Parke Steen, a contractor, the Conestoga Transportation Company, a street railway company, and the City of Lancaster to recover damages alleged to have been suffered by the wife by reason of falling into a hole in a street in the City of Lancaster as she was about to board a car of the street railway company. The case proceeded to trial, and at the conclusion of plaintiffs' testimony, a nonsuit was entered as to all three defendants. The court subsequently refused a motion to take off the nonsuit, and these appeals followed.

In reviewing the evidence in order to determine whether or not appellant was entitled to have the nonsuit removed, we must accept as true all facts and proper inferences from facts which tend to sustain the contention of the appellant and, so far as they rest in parol only, must reject all antagonistic facts and inferences. With this principle in mind, we will state the relevant facts bearing on the questions of negligence.

The accident occurred near the intersection of Manor Street and West King Street on November 13, 1930. Some time prior thereto, Manor Street had been paved to a point a short distance south of the south property line of West King Street, and at the time of the accident West King Street, including the intersection, was being repaved by the defendant Steen, an independent contractor, with eight inches of concrete on which there was yet to be placed by the contractor two inches of asphalt. The concrete work had been completed over the entire intersection and

extended from the curb to a point eighteen inches from the southeast street car track. The earth had been excavated prior to the pouring of the cement from the curb to the street car track, and when the concrete work was completed and the forms removed, there was left a ditch eighteen inches wide and ten inches deep extending from the north end of the old pavement on Manor Street at least to a point opposite a pole at the curb on which there was a signal light for operating the cars. The line where the new pavement began was referred to in the testimony as a "construction joint."

Mrs. Emma M. Martin, one of the plaintiffs, resided a short distance from the point of accident and knew that the repaving had been under way for some time, but had not given particular heed to the exact stage to which the construction had progressed. On November 13, 1930, about 7:15 p. m., on a dark night, she came from the north side and crossed West King Street to the southeast curb of Manor Street where she had seen a street car standing and which she intended to board. Arriving at the south side of West King Street, she walked in the cartway close to the curb to a point opposite the pole on which the signal light was maintained. The front vestibule of the street car of the Conestoga Transportation Company was slightly south of a point opposite the pole. She turned directly toward the front vestibule of the street car, proceeding until she was about to place her foot on the step at the front entrance to the car when the motorman said to her, "Rear door, please." She stepped back, turned to go to the rear, and stepped into the ditch next to the street car track. The evidence indicates that there was not any ditch at the crossing on West King Street which was taken by Mrs. Martin, but it does not appear whether the ditch extended north of the point at which the street car

was standing. The car had been stopped so that the middle of the car was opposite the "construction joint," and there was a barricade at this point. The entire intersection of these streets was closed to ordinary vehicular traffic, but was open for the passage of street cars and pedestrians. If the plaintiff had passed the barricade and entered the street car at its rear, she would not have encountered any depression or the ditch in the street.

The statement of claim alleged that the city of Lancaster had entered into a contract with J. Parke Steen for the paving of streets in that city, including the intersection of Manor and West King Streets from curb line to curb line, excepting therefrom the right of way of the Conestoga Transportation Company, one of the defendants, and a space on each side of the rails eighteen inches in width; that the Conestoga Transportation Company had assumed the construction of the balance of the intersection "either by the laying of brick or concrete within the space of its said rails and to a distance of eighteen inches on either side of its said rails;" and that at the time of the accident the work had not been completed. This allegation was followed by a description of the ditch on the eastern side of the rails into which Mrs. Martin fell. The allegations charging negligence on the part of the defendants, aside from a description of the situation, were inartificially drawn. These may be summarized as follows: (1) the defendants wholly disregarded and neglected their duty to provide a safe and proper highway for the traveling public; (2) the Conestoga Transportation Company disregarded and neglected its duty to provide a safe and proper place for its patrons to board and enter its street railway cars at a usual and customary stopping place for such purposes; (3) the motorman of the traction company beckoned, signalled, and instructed Mrs. Martin to

proceed to the rear of the car for the purpose of boarding the same along a highway in which there were defects which could not have been seen by the passenger owing to the darkness.

It is conceded that the trial court properly granted a compulsory nonsuit as to the city of Lancaster, for neither the evidence nor the pleadings would have supported a judgment against the city. We are of the opinion that the lower court should have submitted to the jury the question of the negligence of the contractor, and should not have disposed of the same as a matter of law. The evidence offered by the plaintiff tended to prove that the contractor, J. Parke Steen, was in sole control of the improvements that were under way and that he alone was responsible for the presence of the ditch into which plaintiff fell. He had supported the concrete as it was poured with a form which, it is apparent, necessitated the excavation of a sufficient space beyond the concrete to hold the forms. There is not a scintilla of evidence that the street had been turned over to the traction company for the purpose of doing any work thereon. While the street had been closed to ordinary vehicular traffic, it was open for the passage of street cars and pedestrians. The concrete work having been completed so that it furnished an even surface, the jury might have concluded that those having occasion to cross a busy intersection or approach street cars would use the street at the point in question. The evidence, if believed, showed that no precautions, other than the placing of a board from the street car line to the curb for the purpose of shutting off ordinary vehicular traffic, were taken to protect pedestrians or warn them of the existence of a dangerous pitfall.

"While it is not necessary in every case to guard the sides of a cartway closed to traffic, it is necessary to take such precautions as will reasonably safeguard

the public; whether they have been taken in a particular case depends upon the local conditions and is generally a question for the jury ...... It is familiar law that a pedestrian may cross a street at any point, and this right is not necessarily and in all cases suspended during the progress of a street improvement; whether he may then do so depends upon the circumstances. His right to go upon the street, when so closed, can neither be broadly affirmed nor wholly denied as a matter of law; for it turns upon the nature of the repairs, the progress of the work, his knowledge or notice of conditions, his reason for using the street, whether there by design or accident and all the circumstances. The fact that a street is in preparation for a pavement, is not notice that a deep trench has been made therein": Whitman v. Stipp, 270 Pa. 401, 404, 113 A. 567.

The principles involved here are quite similar to those in the case of Henigin v. Booth & Flinn, Ltd., 307 Pa. 528, 161 A. 871. In that case the plaintiff had crossed the street in question in the morning. The street was being excavated with a steam shovel and these operations were known to the plaintiff. Crossing the street in darkness on the same night, plaintiff fell into a hole and was injured. It was held that the question of negligence was one for a jury. The remarks of Mr. Justice SIMPSON (p. 532) are pertinent: "Nor can we say, as a matter of law, that plaintiff was contributorily negligent in crossing where she did. As the street was left open, so that she and other citizens might then cross at that point, as theretofore they had done and were then doing, she had the right to assume that she could again cross it without finding a dangerous pitfall in the direct line of travel on the footway crossing. Be it so that she took the risk of any unevenness in the bed of the street where the work was being done, and was bound to be careful as

she proceeded (which she was), it is none the less true that she was not required to suspect that such a dangerous condition as we have briefly described would exist along the usual line of travel for foot-passengers on Oneida Street.''

While Mrs. Martin knew that repairs had been under way on this street for some time, she states that she was not familiar with the stage at which they had arrived or the general conditions, and that in crossing West King Street immediately prior to the accident, she saw nothing that would lead her to believe that the street was not open for passage of pedestrians. In any event, one is not precluded from recovering for an injury received from a defect in a road although he knew it was defective in some respects unless the danger was so apparent that in the use of ordinary care he ought not to have undertaken the passage: Stokes v. Township of Ralpho, 187, Pa. 333, 40 A. 958. Also, see note to Elam v. City of Mt. Sterling, 20 L. R. A. (N. S.) 513, 675. Under the evidence as produced at the close of the plaintiff's case, it was for the jury to determine whether the contractor was negligent.

The question as to whether the trial judge was warranted in granting a nonsuit as to the Conestoga Transportation Company presents a more difficult question which we will consider in the light of the proofs. The plaintiff introduced in evidence two city ordinances, one of which required the traction company to maintain the surface of the street even with the rails between the tracks and for eighteen inches on each side, and the other of which required the traction company, in case of the paving of the street which it occupied, to pave the surface between the tracks only. It was alleged in the statement of claim that the traction company had assumed this burden, but there was not a scintilla of evidence showing that such work had

been assumed by the traction company. The fact that the traction company was required to maintain an even surface for eighteen inches on each side of the tracks did not prevent the city or the contractor from entering the space immediately adjoining the tracks for the purpose of laying down a pavement, and the carrier was not responsible for the conditions created by such work. The contractor had made the excavation allowing sufficient space for the purpose of laying the forms, and there was an absolute absence of proof that the street car company had, at the time of the accident, undertaken any portion of the paving for which it might be responsible, or that it was called upon under the circumstances to maintain an even surface on such space. If the traction company is to be held liable under the pleadings, it must therefore be by virtue of some duty which it owed as a carrier of passengers. Mrs. Martin, in describing her approach to the car, said: "We went up alongside of the curb on the east side of the street, and there was a trolley car standing there ...... and the motorman, I guess, was turning the switch. He got out, away from the switch box, and got into the car ...... I walked up alongside of the curb, and we went to get in the front of the street car, and just as I went to step in, the motorman said, 'The rear end'." The street intersection which was under construction was, and had been for some time, closed to ordinary vehicular traffic. A barricade had been placed in position shutting off the approach of ordinary vehicles. The street car was of an old-fashioned type operated by two men with means of approach at the front and rear, but without closed vestibules and disappearing steps. The steps of the entrances extended beyond the line of the car and across the ditch so that one going directly from the curb to the approach could enter the car with safety even at the front end. In testifying with

relation to the approach at the front, she said (p. 30a):
"If he would have just left me get in the car the way
I was trying to get in, I wouldn't have fallen." The
evidence disclosed that the approach to the rear was
unobstructed by any depression or ditch. The street
car had been stopped at a point where the front vesti-
bule was opposite the signal pole which it was neces-
sary for the motorman to operate and which he did
operate, and there is not any evidence that the car
was not stopped for the discharge and receipt of pas-
sengers before it arrived at the barricade.

This was not a case of an intending passenger who
was injured in a situation where the approach was
exclusively under the control of a common carrier, as
at railway stations and the like. At such places, the
carrier is bound to provide safe access to its vehicles.
Neither was this a case where a passenger was di-
rected to disembark and without fault on his part
stepped into a hole or ditch which a person of ordinary
foresight and prudence could not have seen, of which
situation Gerlach v. Philadelphia, 103 Pa. Superior Ct.
401, 157 A. 212, and Gourlay v. Phila. R. T. Co., 100
Pa. Superior Ct. 419, are examples. Even in the case
of passengers about to disembark, the responsibility
of the carrier ceases when the passenger is placed in
a safe position, and such carrier is not responsible for
the condition of the roadway to the curb. This prin-
ciple is very clearly expressed in the case of Perret v.
George, 286 Pa. 221, 223, 133 A. 228, where the Su-
preme Court said: "Street car companies are not
required to observe the condition of streets over which
its cars travel so as to stop their cars with exactness
at places where passengers may avoid ordinary de-
fects in the highway while alighting. To require
otherwise would be to exact of such carriers a degree
of care not consistent with efficient public service and
would impose an obligation impossible of performance,

considering the condition of some of the highways of today. Street car companies, of course, cannot stop their cars for persons to alight at places manifestly dangerous, as where the car door opens to the side of a street immediately adjacent to an embankment or as in McCollum v. Pitts. Rys. Co. (No. 1), 51 **Pa.** Superior Ct. 637. Here, the stop was made on an improved public highway, a place supposed to be reasonably safe; the passenger had, in legal contemplation, ceased to be a passenger when she stepped to the street. To hold, under such circumstances, that the duty of stopping at a safe place to alight embraced the obligation to avoid any defect in the highway, between the car and the curb, would cause the company to be liable as an insurer of the safety of a pedestrian in coming from or going to a car."

It is not necessarily negligence for a street car company to receive passengers at a point where the streets are under construction or being improved. To hold the carrier liable in all such cases would require the street car company either to become an insurer of the safety of those who passed over a space where improvements were being carried on, or to refuse to accept passengers at such places. The latter would be a great inconvenience to the traveling public and is not required. Where, as here, a public street is being repaved and the work is in progress and an intending passenger knows of such improvements, the street car company is not responsible for the condition of the street between the curb and the car. If any responsibility existed here, it was upon the contractor and not upon the street car company. It is incumbent upon the plaintiffs to prove negligence upon the part of the defendant, and this they failed to do.

The lower court was of the opinion that the pleadings did not allege a joint liability upon the part of the defendants; that the Act of June 29, 1923, P. L.

274

981 (12 PS 685), was, therefore, not applicable; and that this action could not be maintained under the pleadings against either party. While the pleadings are not clear, we think the fair conclusion from the whole statement of claim is that they were charged jointly with responsibility for the presence of the ditch and with negligence with respect thereto. As was said in the case of Gable v. Yellow Cab Co., 300 Pa. 37, 38, 150 A. 162: "We need not weigh the evidence to determine whether or not joint negligence was shown, for, assuming that it was not, then, although appellant's contention would have been sustained prior to the Joint Suit Act of 1923, the reverse is true since its passage."

The judgment of the lower court is reversed, and the rule to show cause why the nonsuit should not be taken off is reinstated to the end the rule may be made absolute as to the defendant, J. Parke Steen.

KELLER, J., would affirm the judgment of the court below.