Lelia JOSHMER, (Plaintiff) Respondent,

v.

FRED WEBER CONTRACTORS, Inc., and Solon Gershman Realtors, Inc., (Defendants) Appellants.

Nos. 29449, 29450.

St. Louis Court of Appeals. Missouri.

Sept. 18, 1956.

Motions for Rehearing or for Transfer to Supreme Court Denied and Opinion Modified Nov. 13, 1956.

Luke, Cunliff & Wilson, and Wilton D. Chapman, St. Louis, for appellant Fred Weber Contractors, Inc.

J. C. Jaeckel, and Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant Solon Gershman Realtors, Inc.

Cleo V. Barnhart, St. Louis, for respondent.

MATTHES, Judge.

Plaintiff was injured when a board upon which she was walking broke, causing her to fall into a ditch or excavation. The trial resulted in a verdict in favor of plaintiff and against both defendants for $6,500, and against each defendant on its respective cross claim. From the judgment entered on the verdict, both defendants have appealed. For convenience and brevity we shall hereafter sometimes refer to defendant Fred Weber Contractors, Inc., as contractor, and to Solon Gershman Realtors, Inc., as realtor.

There is slight disagreement concerning the facts to which we now attend. Plaintiff, who weighed 260 pounds when injured, had been working as a domestic servant since March, 1951, for one of the tenants in a 24-family apartment building situated on the south side of Delmar Boulevard, an east and west street in the City of St. Louis, Missouri. There were three front entrances to the apartment building known as 8360, 8364, and 8368 Delmar. Realtor was the manager of and charged with the responsibility of caring for and maintaining the property, including the sidewalks.

Pursuant to contract with the Missouri State Highway Commission, the contractor was widening Delmar Boulevard in May, 1951. Prior to the commencement of this project the main sidewalk extended from the front entrances northwardly to the street. Because of a terrace in the front portion of the lawn, four steps were placed in the sidewalk which led down to the street level. In widening Delmar the contractor removed the terrace, including the steps. This cutting away of the terrace caused a ditch and embankment where the steps had existed. A witness for plaintiff fixed the depth thereof at three or three and one-half feet, whereas the vice-president of contractor, who was its construction superintendent, stated it was one foot. The ditch in question, the concrete pavement on the south side of Delmar, the north

portion of the apartment property as well as the broken board are best described by the following two photographs which concededly disclose the existing condition following plaintiff's fall. We emphasize that the pictures do not disclose the unbroken board and its position at the time of the accident.

The excavation had been in existence for a period of seven to eight days. Approximately 80 feet west of the sidewalk entrance was a driveway used by vehicles as a means of ingress and egress to and from the property off of Delmar. This driveway remained undisturbed for a period after the terrace and steps had been removed, and persons on foot entering or leaving the apartment would use the driveway. Prior to the eventful day, however, the driveway had also been cut down causing an embankment. According to one witness the grade of the street, after the excavation across the driveway, was 14 inches lower than the end of the driveway.

The property manager of realtor testified that he was fully aware of the condition that existed on and prior to the date of the occurrence; that after the excavation had extended across the driveway it was necessary to trespass or walk over adjoining property, or come in from the rear, to gain entrance to the building, otherwise a person would be required to jump across "that ditch", or walk "across the planks". When the janitor employed by realtor was interrogated concerning the method of gaining entrance to the premises, he stated: "Well, they (people) did the best they could, sir. They had to climb that bank and do like I did, jump over it". Neither defendant took any steps to provide for an entrance or exit to and from the property.

Upon arriving in front of the premises on May 24, 1951, plaintiff saw a board, described as one inch thick, twelve inches wide, and eight feet long, extending from the south side of the street across the ditch to the property at the place where the steps had been. She was familiar with the widening project. Prior to that date she had entered over the driveway, but because "they dug the ditch across the driveway," she couldn't use that entrance. Seeing the board, plaintiff concluded it had been placed there to permit persons to gain entrance to the apartment property. In plaintiff's words, it was her "onliest way to get in the building". She thought the board was safe. When she got half way across the board it broke, precipitating her into the ditch.

By the undisputed testimony, it was disclosed that a day or two following plaintiff's fall a bridge was constructed extending from the street level across the excavation to the north property line. It was three boards wide, and a railing or banister formed a part of the structure. Plaintiff was unable to establish the identity of the man who built the bridge, or that he had any connection with either defendant. Likewise, it should be said that plaintiff was unsuccessful in her attempt to prove that either defendant placed the board which broke under plaintiff's weight.

Plaintiff pleaded three assignments of negligence. The first was that defendants placed a board leading from the northern edge of the sidewalk to the surface of the ground approximately three feet below, when defendants knew or should have known that the board was of insufficient strength to support the weight of persons using the same. The second assignment follows:

"5. That the defendants negligently failed to provide a reasonably safe and secure foot bridge across the aforesaid excavation for use by tenants residing in the aforesaid apartment building and their invited guests in entering upon and departing from the aforesaid premises, when in the exercise of ordinary care defendants could and should have done so."

By Instruction No. 1 the cause was submitted as to contractor on the theory of its failure to provide a temporary foot bridge of such width, stability and strength to have afforded tenants in the apartment building and their employees and guests a reasonably safe means of egress to and from Delmar Boulevard. Instruction No. 2 submitted the identical issue as to defendant realtor.

Consistent with their position in the trial court, the defendants assert that a submissible case was not made and that their separate motions for a directed verdict should have been given. Although defendants join in relying upon certain common grounds or points in urging this basic proposition, each advances a separate theory of non-liability which we shall first dispose of.

█ Contractor urges the evidence was insufficient to establish actionable negligence on its part which was the proximate cause of plaintiff's injuries. It relies upon the well settled principle that there must be a duty raised by law and breached by defendant before an action for negligence lies. Kelly v. Benas, 217 Mo. 1, 9, 116 S.W. 557, 559, 20 L.R.A.,N.S., 903. And upon the authority of Slicer v. W. J. Menefee Const. Co., Mo.Sup., 270 S.W.2d 778, contractor insists there was no legal duty imposed upon it to provide a temporary bridge or safe means of passage between the apartment property and Delmar Boulevard.

Careful consideration and analysis of the opinion in the Slicer case compels us to conclude that it is not controlling in the instant case. It is true that in Slicer the petition charged that defendant, having knowledge of the location of deceased's home and that she would have to cross New U. S. Highway 66 to reach Old U. S. Highway 66, failed to provide deceased a safe means of passage between her residence and Old U. S. Highway 66. Under the pleaded facts, the Supreme Court said no duty existed on the part of the defendant to assure deceased safe conduct across the highway, particularly in the absence of an averment that defendant had contracted to, "or was otherwise obligated to", provide a passageway over the new highway. It is significant to note, however, that in the Slicer case plaintiff's decedent did not lose her life resulting from an unsafe or dangerous condition brought about by the method of construction of the new highway. In other words, the court was not considering an unsafe and dangerous exit or entrance, made by the contractor, leading from the premises of the deceased to the new highway. Rather, it was dealing with the duty, if any, imposed upon the contractor to assure an occupier of contiguous property safe passage over a highway. This was aptly pointed out by the court in this language, Slicer v. W. J. Menefee Const. Co., supra, 270 S.W.2d, loc. cit. 781:

"The petition does not aver that any defect in the roadway, any obstruction upon the roadway, or any affirmative act of the contractor in the actual construction of the highway, had any connection with or relation to deceased's fatal injury."

█ There are certain fundamental principles which are applicable to the situation at hand. The primary duty rests on a road contractor to exercise reasonable care for the safety of the general public. using a road or highway which a contractor is improving or repairing; he must act reasonably and with due regard to the rights of persons lawfully using the way; and is liable for injuries resulting from negligence in the performance of his work. This rule was recognized in the Slicer case, supra, where the court said, 270 S.W.2d, loc. cit. 781:

"It is true, as plaintiff contends, that the contractor owed deceased the same general duty he owed to all persons, viz., to exercise ordinary care, in the prosecution of the work of constructing the highway, not to injure her."

This principle seems to have received universal application. 40 C.J.S., Highways, § 254, p. 292; 13 R.C.L., § 276, p. 336; Trigg v. H. K. Ferguson Co., 30 Tenn.App. 672, 209 S.W.2d 525; Cleveland Trinidad Paving Co. v. Mitchell, 42 Okl. 49, 140 P. 416; Folkins v. Johnston, 124 Cal.App. 169, 12 P.2d 153; Wedegartner v. Skoruppa, Tex.Civ.App., 236 S.W.2d 216; Finchem v. Oman, 18 Tenn.App. 40, 72 S.W.

2d 564; Toler v. Hawkins, 188 Okl. 58, 105 P.2d 1041; Codell Const. Co. v. Steele, 247 Ky. 173, 56 S.W.2d 955; Briscoe v. Worley, 208 Okl. 60, 253 P.2d 145; Welsh v. City of South Omaha, 98 Neb. 148, 152 N.W. 302; Martin v. Steen, 109 Pa.Super. 263, 167 A. 609; Niblett v. Mayor, etc., of City of Nashville, 59 Tenn. 684.

■ Liability is imposed upon the contractor not by virtue of his contract with a public authority, or upon failure to perform the work in accordance with a contract, but upon the tortious breach of duty imposed upon the contractor by common law. 43 Am.Jur., § 81, p. 825; Briscoe v. Worley, supra. And the contractor may be liable even though he acted without negligence in creating the dangerous situation, and this liability exists regardless of the requirements of his contract with the highway authorities and irrespective of any liability on the part of the governmental body employing the contractor. 40 C.J.S., Highways, § 262, p. 309.

■■ With these principles in mind, we are persuaded to hold that the contractor was under a legal duty to exercise ordinary care with regard to the rights of the tenants of the apartment building, their employees and guests. The contractor permitted pedestrians to use Delmar Boulevard during the course of the widening project. It was fully aware that people entered upon the apartment premises by use of the pedestrian entrance. This means of access was rendered dangerous and unsafe as the result of the cutting away of the terrace, thereby causing an embankment or precipice three to four feet in height. After that condition came into existence pedestrians entered and left the apartment premises over the vehicular driveway. This fact, too, was known to the contractor. Therefore, when the contractor excavated across the driveway and, likewise, rendered that entrance unsafe, it knew, or by the exercise of ordinary care should have known, that all front entrances to the premises had been cut off.

According to witnesses for plaintiff, there was no way of getting onto the property except by trespassing over adjacent premises or by using the rear entrance, and the record is extremely meager as to what the latter would have entailed. In this situation, we cannot say that the contractor was absolved of any duty to persons lawfully using the roadway to exercise ordinary care to provide a temporary bridge across the excavation. Indeed, contractor's vice-president and construction superintendent, Fred R. Weber, Jr., apparently recognized that a duty existed, as disclosed by certain of his testimony. Although he contended the vehicular driveway was not taken out of use by pedestrians, he nevertheless admitted that if the driveway entrance had been rendered unsafe for use, as testimony favorable to plaintiff indicated, he would have corrected the situation. Ingress and egress was obstructed as the result of an affirmative act of the contractor in the actual performance and carrying out of the widening project, and we believe a jury question was presented.

■ Defendant realtor attacks the action of the trial court in submitting the case to the jury on a different theory. It does not dispute the firmly entrenched rule that, as manager of the property with full control of the entrances, including the walks which served for the common use of all the tenants, it was under duty to exercise reasonable care to keep such entrances in a reasonably safe condition for use of the tenants and their employees. 32 Am.Jur., Landlord and Tenant, § 688, p. 561; 52 C.J.S., Landlord and Tenant, § 417, p. 29; Brewer v. Silverstein, Mo.Sup., 64 S.W.2d 289; Roman v. King, 289 Mo. 641, 233 S.W. 161, 25 A.L.R. 1263; Henry v. First Nat. Bank of Kansas City, 232 Mo.App. 1071, 115 S.W.2d 121, Annotation 25 A.L.R., page 1273. Rather, realtor's emphatic position is that plaintiff's pleaded cause of action was grounded upon the assignment that the defendants placed or caused to be placed, a defective and unsafe board across the

excavation, and that failing to establish that allegation as to realtor, the judgment cannot stand because the verdict of the jury was based upon speculation and conjecture. More precisely, the point is made that, "Considering the amended petition as a whole, it is plain that the intent of the pleader was, and the meaning to be applied to the language used is: The defendants furnished an insufficient board and placed it in position for use in crossing the excavation and, in so doing, failed to provide a reasonably safe and secure foot bridge". Respecting paragraph 5 of the amended petition set out in full, supra, realtor says it is inseparably linked with and must be considered as a part of paragraph 4 which deals with placing the defective board where it was when plaintiff attempted to cross the bridge by means thereof. This point cannot be sustained.

It is a fundamental and firmly entrenched principle that in determining if a petition states a claim or cause of action, the averments therein are to be given a liberal construction, according the allegations their reasonable and fair intendment, and fair implication should be indulged from the facts stated. So considered, a petition should be held sufficient if its averments invoke substantive principles of law which entitle plaintiff to relief. Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, loc.cit. 54; Slicer v. W. J. Menefee Const. Co., supra, 270 S.W.2d, loc.cit. 780. A pleading which is ambiguous, or in which doubt or confusion appears, is to be taken strongly in its interpretation against the pleader. Koewing v. Greene County Building & Loan Ass'n of Springfield, 327 Mo. 680, 38 S.W.2d 40. But the amended petition here considered cannot be classed as being ambiguous or doubtful. Paragraph 5 thereof clearly charged the defendants with an act of negligence which we hold is separate and independent of the charge contained in the preceding paragraph.

Both defendants make the point that plaintiff assumed or incurred the risk of whatever danger inhered to the use of the board as a means of crossing the excavation and that, having assumed or incurred such risk, their respective motions for dismissal or directed verdict should have been sustained. Plaintiff counters with the contention that the assumption of risk doctrine is one which must rest on contract, and where negligence primary or contributory is present the doctrine has no place. Our Supreme Court, in August Viermann Bricklaying Co. v. St. Louis Contracting Co., 335 Mo. 534, 73 S.W.2d 734, so ruled, as did the Kansas City Court of Appeals in Page v. City of Fayette, 233 Mo.App. 37, 116 S.W.2d 578, 582. A distinction has been made, however, between the doctrine of assumption of risk and the doctrine called "incurred risk". This court recognized the distinction in Dietz v. Magill, Mo.App., 104 S.W.2d 707, wherein we said, loc.cit. 711:

"In other words, if one voluntarily exposes himself to a known and appreciated danger, even though the same may be attributable to the negligence or carelessness of another, he may not recover for the injury sustained as a consequence of such exposure, and this regardless of the fact that he himself may perchance have been in the exercise of due care for his own safety at the time. Strictly speaking, the doctrine is actually one of 'incurred risk' (Stein v. Battenfeld Oil & Grease Co., 327 Mo. 804, 816, 39 S.W.2d 345, 350), * * *."

The incurred risk doctrine was also recognized in the more recent case of Hathaway v. Evans, Mo.App., 235 S.W.2d 407.

The facts do not bring the case within the incurred risk doctrine as laid down in the Dietz and Hathaway cases so as to preclude plaintiff as a matter of law from recovering. We cannot say that plaintiff voluntarily exposed herself "to a known and appreciated danger". Therein, this

case is wholly different from Dietz v. Magill, supra, wherein plaintiff declined an offer to turn on the lights and voluntarily chose to descend the stairway without the aid of artificial light. Herein, plaintiff testified that the board was across the embankment where the steps had been. She stated: "I thought it was there for the use of the—to walk across that was my onliest way to get in the building". She further testified she wouldn't have attempted to walk across the board if she had known it would not hold her weight.

▮ Neither can plaintiff be held guilty of contributory negligence as a matter of law, as urged by the defendants. Before we can convict plaintiff of contributory negligence as a matter of law the evidence must be such as to permit of no other reasonable conclusion, giving the plaintiff the benefit of every reasonable inference that may be drawn from all of the evidence in her favor. Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498; Hathaway v. Evans, supra; Missouri Digest, Negligence, ☞ 136(9). Defendants place much emphasis on the position of the board across the ditch, as revealed by two of the photographs. They urge that these photographs disclose the board was inclined to such a degree that it was readily apparent to a reasonably prudent person that it was unsafe to attempt to ascend it. The difficulty with this position is, the photographs do not show the position of the board confronting plaintiff before she attempted to walk upon it. Indeed, the photographs show the board in its broken condition. Instead of the photographs showing a board eight feet long extending across the ditch, they reveal a board approximately half that length. And in her testimony plaintiff pointed out that the photographs did not reveal the true condition of the board that she attempted to ascend. On facts more consistent with the claim that contributory negligence defeated recovery, it was held the question was one for the jury. See and compare Miller v. Brunson Const. Co., Mo.

Sup., 250 S.W.2d 958; State ex rel. Kansas City v. Shain, Mo.Sup., 177 S.W.2d 511, affirming Nicholas v. Kansas City, Mo.App., 171 S.W.2d 744; Dalton v. John Maguire Real Estate Co., Mo.App., 221 S.W. 443; Lang v. Hill, 157 Mo.App. 685, 138 S.W. 698.

▮ We now consider points raised in support of the contention that, because of procedural errors, defendants are entitled to another trial. They urge that verdict-directing Instructions Nos. 1 and 2 were prejudicially erroneous because they did not submit and require a finding that plaintiff was not guilty of contributory negligence and had not assumed the risk. We are not impressed with the urgency of this contention. Each assailed instruction required the jury to find as a prerequisite to plaintiff's recovery that she was "at all times exercising ordinary care for her own safety, and if you find that while plaintiff was so doing," etc. The cases of Cuddy v. Shell Petroleum Corporation, Mo.App., 127 S.W.2d 24, certiorari quashed State ex rel. Shell Petroleum Corporation v. Hostetter, 348 Mo. 841, 156 S.W.2d 673; Ferguson v. Betterton, 364 Mo. 997, 270 S.W.2d 756; and Pearrow v. Thompson, 343 Mo. 490, 121 S.W.2d 811, relied upon by defendants, are not controlling. In the Cuddy case, the main instruction did not submit exercise of ordinary care by plaintiff. The Ferguson and Pearrow cases presented a question with which we are not concerned. In each case, the defendant offered, and the court gave, an instruction submitting the issue of contributory negligence in broad and general terms, and it was held that the requirement in plaintiff's verdict-directing instruction, that plaintiff was exercising ordinary care, did not invite and waive the error in defendant's instruction submitting contributory negligence in general terms. Nothing is said in either the Ferguson or Pearrow case indicating that the Supreme Court intended to overrule the firmly established principle that the issue of contributory negligence on the part of plaintiff is sufficiently

negatived when the instruction authorizing a verdict for plaintiff specifically requires, as here, a finding that plaintiff was in the exercise of the degree of care imposed upon her by law. See Jackson v. Anderson, Mo.App., 273 S.W. 429; Wheeler v. Breeding Mo.App., 109 S.W.2d 1237; Bernard v. Waverly Brick & Coal Co., 189 Mo.App. 417, 176 S.W. 1108; Kean v. Schoening, 103 Mo.App. 77, 77 S.W. 335; Wright v. Dinger Mining Co., 163 Mo.App. 536, 147 S.W. 213, 214; Arky v. Kessels, Mo.App., 262 S.W.2d 357.

■ It is next asserted error was committed because the court gave an instruction that, in determining the amount of damages to be awarded plaintiff, the jury should not take into consideration the amount plaintiff received in the nature of relief from a government agency in mitigation of plaintiff's damages. In this connection, plaintiff had testified she received $40 per month "assistance". Neither the source of the payments nor total amount received was developed. Morris v. Grand Avenue R. Co., 144 Mo. 500, 46 S.W. 170, loc. cit. 172, cited by defendants is clearly distinguishable. The correct rule is announced in 15 Am.Jur., Damages, § 198, p. 615, which is that contributions received by the injured party as a direct result of being injured, such as charitable donations, which would include relief subsistence, are not to be taken into consideration in assessing his damages. The rule finds support in 25 C.J.S., Damages, § 99, pp. 647, 648; and in Burens v. Wolfe Wear-U-Well Corporation, 236 Mo. App. 892, 158 S.W.2d 175, 178, 179. The point is ruled against defendants.

■ The defendant contractor urges error because plaintiff's counsel in his closing argument, after commenting upon certain evidence, stated: "so that gives them the right to ask the Judge to give you Instruction 2–A in this case, that if you find a board didn't break * * *." The precise point is that instructions are not given by counsel, but by the court. This is a correct statement, but we are unable to hold that the rights of defendant contractor were prejudiced because of the argument. The trial court is vested with broad discretion in ruling on the propriety of the argument with respect to prejudice and, unless a clear abuse of discretion is manifested, we should defer to the judgment of the judge of that court. Shelley v. St. Louis Public Service Co., Mo.App., 279 S.W.2d 182, loc. cit. 187 and cases cited. Abuse of discretion is not demonstrated with respect to the ruling of the trial court in refusing a mistrial because of the argument complained of.

Defendants urge that the award of $6,500 is grossly excessive. In disposing of this question, we view the evidence from the standpoint most favorable to plaintiff. Pitt v. Kansas City Public Service Co., Mo.Sup., 272 S.W.2d 193, 198. When the case was tried four years following occurrence, plaintiff was 47 years of age. Although she injured her back in an accident in 1947, she stated she had fully recovered therefrom. Immediately upon falling into the ditch she suffered pain in her left knee and lower back. The next day she received treatment from Dr. Vaughn C. Payne in his office. The doctor strapped her back and bandaged her knee. She received diathermy treatments three times a week, and was under the doctor's care for a year. At the time of the trial, plaintiff experienced stiffness in her back and knee joint. She was earning $27.50 per week, and lost one year's employment because of the injuries.

Dr. Payne testified that plaintiff's knee was swollen and tender when he examined her on May 25th. She could not flex or extend the knee joint; the muscles in the lower back region were spastic and tender. X-ray pictures taken on May 26th revealed a "moderate osteoarthritis" of the lumbar vertebra which was not caused by the injury. A spur formation involving superior surface of patella and a pronounced nar-

rowing of the medial joint space in left knee joint were disclosed by X-rays. The doctor stated: "That is similar to the Semi-lunar cartilage" which had been injured and displaced. Dr. Payne's diagnosis was an injury to the soft tissues of the lower back, a sprain and derangement of the left knee joint, and an aggravation of a pre-existing arthritis in bones of the knee joint. X-rays taken on March 3, 1955, revealed pronounced narrowing of the medial joint space in the knee joint which was increased over condition that existed in 1951. His opinion was that plaintiff suffered a permanent injury to the left knee joint. He stated: "any time that you get a displacement of the semilunar cartilage in a joint, that joint is always permanently injured." He charged $146 for his services.

Plaintiff was examined by Dr. E. H. Bowdern on November 23, 1951, at request of defendant realtor. This doctor did not testify. On October 29, 1954, Dr. Robert Mueller also examined plaintiff for both defendants. He found some limitation of motion on bending her back to left; and approximately 5 per cent limitation of flexion in left knee. X-rays revealed hypertrophic arthritis in back and narrowing of the fifth lumbar interspace. There was a narrowing of medial part of left knee, and marked spur formation was present in practically "all aspects of the knee joint." The narrowing "would be some involvement of the semilunar cartilage which occupies that space." The doctor stated that the arthritis in plaintiff's left knee joint could have been aggravated by the injury plaintiff received when she fell.

■ In disposing of the question of excessiveness we must observe the principle that a jury verdict should not be disturbed as to the amount unless it is grossly excessive. Keely v. Arkansas Motor Freight Lines, Mo.Sup., 278 S.W.2d 765, loc. cit. 771, and cases cited. "It is fundamental that the amount of damages to be awarded where the amount is not a mere matter of computation, is within the special province of the jury to determine, and is not to be interfered with by an appellate court unless the verdict is so large as to offend against all sense of right." Marshall v. St. Louis Union Trust Co., Mo.App., 196 S.W.2d 435, loc. cit. 437.

■ Considering the nature of plaintiff's injuries, her pain and suffering, the permanency of the injury to her left knee, her loss of earnings of $1,430, and her medical expense of $146, we are of the opinion the award should not be held excessive. No useful purpose will be served in reviewing Wofford v. St. Louis Public Service Co., Mo.Sup., 252 S.W.2d 529, being the only case cited by both defendants in support of their position, or the cases cited by plaintiff. They have received our careful consideration. While we have found no case presenting injuries exactly like those suffered by plaintiff, the cases of Marshall v. St. Louis Union Trust Co., supra; De Voto v. St. Louis Public Service Co., Mo. App., 251 S.W.2d 355; Keely v. Arkansas Motor Freight Lines, supra; and Jensen v. Kansas City, 361 Mo. 967, 238 S.W.2d 305, support plaintiff's contention that the verdict is not so excessive as to require interference by this court.

In the respective cross claims each defendant sought a judgment against the other in the event plaintiff recovered against both, on the theory that the other defendant had caused the defective board to be placed across the excavation. Notwithstanding the lack of probative evidence to support such claim, that issue was submitted to the jury which found against both defendants on the cross claims. Each defendant now urges us to direct entry of judgment against the other for the amount of plaintiff's judgment. Contractor advances no theory to support its position but merely raises the point. Realtor's theory is that its liability, if any, to plaintiff must flow from the presence

of the board and the breaking thereof, and contends that the evidence gives rise to the inference that the board was placed by contractor. On that premise realtor says it was not in pari delicto with the co-defendant. Obviously if there was competent evidence in the record to establish realtor's factual assertion and if plaintiff's case had been submitted on that theory there would be no basis for holding realtor liable to plaintiff. But from what has been said such is not the case.

The rule governing the right of indemnity is reannounced in Barb v. Farmers Ins. Exchange, Mo.Sup., 281 S.W.2d 297, 304, relied upon by both defendants. It is there stated that where one person has been exposed to liability and compelled to pay damages on account of the *negligence of another*, the first has a right of action against the other for indemnity. Where the parties are not in pari delicto in cases where one party creates the condition which causes injury *and the other does not join therein* but is exposed to liability on account of it, the rule that one of two joint tort-feasors cannot maintain an action against the other for indemnity does not apply. (Italics supplied.) But where, as here, the parties are in pari delicto, the right of indemnity does not exist. 42 C.J.S., Indemnity, §§ 21, 27, pp. 596, 604. See also Busch & Latta Paint Co. v. Woermann Const. Co., 310 Mo. 419, 276 S.W. 614; Hunter v. De Luxe Drive-In Theatres, Mo.App., 257 S.W.2d 255.

Finding no reversible error the judgment should in all respects be affirmed. It is so ordered.

ANDERSON, P. J., and ELMO B. HUNTER, Special Judge, concur.