546 A.2d 1291

Yvonne Edwards *v.* Commonwealth of Pennsylvania, Department of Transportation et al. Commonwealth of Pennsylvania, Department of Transportation, Appellant.

Argued March 23, 1988, before Judges DOYLE and BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Eugene G. Berry,* Deputy Attorney General, with him, *Mark E. Garber,* Chief, Tort Litigation Unit, and *LeRoy S. Zimmerman,* Attorney General, for appellant.

*Alan H. Perer,* with him, *Nelson B. Gaugler, Swensen & Perer,* for appellee, Honeywill and Company.

OPINION BY SENIOR JUDGE BARBIERI, August 22, 1988:
The Pennsylvania Department of Transportation (DOT) appeals an order of the Allegheny County Court

of Common Pleas granting summary judgment to Honeywill and Company (Honeywill).

This matter stems from a single vehicle accident which occurred August 8, 1984, on Pennsylvania Route 910 in Allegheny County at approximately 2:00 a.m. At that time Yvonne Edwards, who had become intoxicated while drinking at a bar called Dingbats, drove her automobile around a curve and over an embankment at a point at which there was no guiderail. Earlier in the year, DOT had erected a 20 m.p.h. advisory speed limit sign in the area as well as signs warning of the curve.[1]

At the time of the accident, Honeywill was under contract with DOT to repair or replace guiderail in Beaver and Allegheny Counties, including certain stretches along Route 910. In fact, on the day prior to the accident, Honeywill was working in the vicinity of the accident site but had not yet reached the point where Ms. Edward's vehicle left the road. Honeywill did reach the accident site and erected[2] guiderail there later on the day of the accident.

Ms. Edwards was twenty-four years old at the time her automobile went over the embankment on Route 910 and is now a paraplegic as a result of the accident. She brought an action in the trial court against Dingbats for serving her alcoholic beverages while she was visibly intoxicated and against DOT and Honeywill for failing to erect guiderail at the point where the accident occurred.[3] DOT and Dingbats subsequently filed cross-

---

[1] *See* answer to question No. 36 in DOT's Answers to Interrogatories.

[2] In addition to repairing existing guiderail, Honeywill extended the guiderail on Route 910 pursuant to the repair/replacement contract.

[3] The Township of Indiana was an original defendant as well. By order dated April 15, 1986, the trial court granted the Township's motion for summary judgment in light of the fact that the accident occurred on a Commonwealth highway.

claims against Honeywill. The Complaint, and both Dingbats and DOT's New Matter filed pursuant to Pa. R.C.P. 2252(d), allege *inter alia,* that Honeywill was negligent in failing to promptly construct guiderail in the area of the accident and in failing to warn motorists that there was no guiderail in the area when it was in the process of being installed at the time of the accident.

In granting Honeywill's motion for summary judgment as to the original complaint and the cross claims, the trial court held that Honeywill had no duty to place traffic control or warning devices at the scene of the accident as it had not yet begun to work at that site. On appeal to this Court, DOT contends that the trial court erred in granting summary judgment as Honeywill had a contractual duty to safeguard the public and failed to place any warning devices in the area despite the fact that it had been working the previous day in the vicinity of the accident site. DOT suggests that Honeywill could have erected lighting devices, signs, barricades, or drums to warn and protect motorists from the potential hazard it was engaged to eliminate.

Honeywill entered into two contracts with DOT for the repair and replacement of damaged guiderail in Allegheny and Beaver Counties. Work commenced under the first contract in September of 1983, when DOT's project coordinator and Honeywill's superintendent compiled a seventeen page list designating work to be performed on various legislative routes. However, funding ran out before all work on this list could be completed. Additional funds were allocated and by a contract dated July 26, 1984, the remaining work was to be completed. On August 2, 1984, Honeywill commenced work pursuant to DOT's Notice to Proceed. The proposed work on Route 910 began that day and was appar-

ently completed on August 8, 1984, the day of the accident.

DOT contends that the issue of whether or not Honeywill was required by contract to place warning devices[4] along that portion of Route 910 where the Edwards vehicle left the road, presents a genuine question of fact precluding summary judgment. In support of its contention, DOT cites the regulations in former Subchapter A of 67 Pa. Code Chapter 203 together with Section 900 of Form 408.[5]

Pursuant to Pa. R.C.P. 1035, summary judgment shall be entered if the pleadings, depositions, admissions, and answers to interrogatories, together with supporting affidavits, reveal there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Professional and Public Service Employees Union Local 1300 v. Trinisewski,* 94 Pa. Commonwealth Ct. 462, 504 A.2d 391 (1986). A court may enter summary judgment only "in the clearest of cases, i.e., where there is not the slightest doubt concerning the absence of a triable issue of material fact." *Burnside v. Abbott Laboratories,* 351 Pa. Superior Ct. 264, 274, 505 A.2d 973, 978 (1986).

Former 67 Pa. Code Chapter 203 was rescinded and replaced in its entirety effective January 1, 1984, and now only applies to "projects already under construction or projects having a bid opening date, permit issuance date or starting date prior to January 1, 1984." 67 Pa. Code §203.5. Even though the 1984 contract includes work which had originally been scheduled under the 1983 contract, separate bids were taken on the later

---

[4] Chapter 203 of 67 Pa. Code Chapter 203 provides standards to be employed when using various warning devices such as lights, signs, and barricades.

[5] Form 408 refers to the contract and specifications.

contract. Bids on the 1984 contract were not opened until May of 1984 and the starting date was August 2, 1984. Therefore, we believe the new rather than the former regulations are applicable to this matter.

The 1984 contract between DOT and Honeywill incorporates the provisions of 67 Pa. Code §203. Subchapter A of this Section sets forth basic principles and guidelines for traffic control within construction, maintenance, or utility "work zones" on Commonwealth highways.[6] "Work zone" is defined in 67 Pa. Code §203.3 as "[t]he work area and the section of highway used for traffic control devices related to the work area." "Work area" is defined in this same section as:

> [a] location where construction, maintenance, or utility operations are being performed or where previous operations have not yet been completed and *potential hazards* or traffic obstructions are still present. (Emphasis added.)

"Traffic control devices" are defined as:

> [s]igns, signals, markings and devices authorized in Chapter 211 (relating to official traffic control devices) or this chapter and consistent with the basic rules of the road established by the Vehicle Code and placed or erected for the purpose of regulating, *warning, or guiding traffic* by authority of a public body or official having jurisdiction over the roadway.

67 Pa. Code §203.3 (emphasis added).

We disagree with DOT's assertion that Honeywill was under a duty to erect barricades or drums as Subchapter D of the regulations concerning channeling devices provides that the function of these devices is to warn motorists of potential hazards *caused* by construction or maintenance. 67 Pa. Code §203.51. There is no

---

[6] 67 Pa. Code §203.1.

evidence that Honeywill removed existing guiderail which it failed to replace. To the contrary, the deposition testimony reveals that the Edwards' vehicle left the roadway in an area in which new guiderail was scheduled to be installed and was in fact installed later on that same day. Therefore, we must address DOT's contention that Honeywill should have erected lighting devices or signs to warn of the fact that there was no guiderail in the area on Route 910 where the accident occurred.

The regulation at 67 Pa. Code §203.43(a), provides that "[w]arning signs are used to notify drivers of unusual conditions or *potential hazards associated with work zones*." (Emphasis added.)

Official traffic control devices, including work zone signs, are listed and described in Chapter 211 of 67 Pa. Code. Warning signs in this chapter include a "No Guard Rail" sign.[7] A "No Guard Rail" sign is:

> authorized for use on new construction when guard rails are scheduled for installation, but have not been installed prior to opening the highway for traffic. It shall also be used when existing guard rail has been removed for maintenance and is scheduled for replacement.

67 Pa. Code §211.694(a). This sign is to be placed "in advance of the condition and at intervals throughout the area." 67 Pa. Code §211.694(b).

The Edwards' vehicle left the roadway in an area in which new guiderail was scheduled to be erected. Also, Honeywill had previously been replacing damaged guiderail in the immediate vicinity of the accident. We believe the situation presented in this situation is substantially similar to those situations listed in

---

[7] The parties and the trial court use the term "guiderail" while the regulations use the term "guard rail". The terms are synonymous.

§211.694 to raise a question as to whether a "No Guard Rail" sign would have been appropriate. DOT does not specify what, if any lighting devices provided for in the regulations would have been applicable to this situation. However, the regulations provide for illuminated or reflectorized signs[8] and floodlights[9] as well as other types of warning lights. The next question then is whether Honeywill had a contractual duty to erect any of these warning devices.

It has been previously held that where a landowner hires an independent contractor with experience and know-how, who selects its own equipment and employees, he has no further liability in connection with the work to be done. *Brletich v. United States Steel Corp.*, 445 Pa. 525, 285 A.2d 133 (1971). The work to be done is found in the contract which incorporates the regulations in Chapter 203 of 67 Pa. Code. According to the regulations, the contractor has final responsibility for protection of the public within the work zone.[10] Further, traffic control devices,[11] are to be installed *prior* to the start of work.[12] Sections 901.1 and 901.2 of Form 408 provide that the contractor shall furnish material and traffic control devices for the "maintenance and protection of traffic *adjacent to and within the construction area.*" (Emphasis added.) As Honeywill was working on August 7, 1984, in the immediate vicinity of the accident site, the issue of whether it has any responsibility to erect warning devices depends upon whether

---

[8] 67 Pa. Code §203.41(b).

[9] 67 Pa. Code §203.85.

[10] 67 Pa. Code §203.7(d).

[11] As already discussed, the definition of "traffic control devices" in the regulations includes warning signs and other devices authorized by Chapters 203 and 211 of 67 Pa. Code.

[12] 67 Pa. Code §203.9(a)(2).

the accident site was adjacent to and within the construction area.

In granting Honeywill's motion for summary judgment, the trial court stated:

> The accident in the present case admittedly occurred in the middle of the night when no construction activity was being carried on and at a place *where no construction activity had been begun* by Honeywill. Under [former 67 Pa. Code §203.4 and 203.5], Honeywill was under no obligation to place traffic control and warning devices at the scene of the accident until it began construction at that particular site. Having not begun construction at the time and place of the accident, it had no responsibility under [former] 67 Pa. Code §203.4[13] to protect plaintiff as a member of the public. (Emphasis added.)

On a motion for summary judgment a court should not attempt to resolve conflicting contentions of fact or conflicting inferences which might be drawn from the facts. *Burnside*. We do not believe the facts are as clear cut as the trial court suggests.

It is not at all clear that the 225 foot guiderail extension was not started until August 8, 1984. All that is clear is that pursuant to the 1984 contract with DOT, Honeywill was to repair and replace damaged guiderail on Route 910 and was to extend the existing guiderail 225 feet. The Edwards' vehicle left the roadway in the early morning hours of August 8, 1984, at a point *somewhere* within that 225 feet. It is also clear that Honeywill was working in the vicinity of the accident site on August 7, 1984 and *completed* the 225 foot extension the following day. It is not clear exactly where

---

[13] The trial court applied the regulations contained in former Subchapter A of 67 Pa. Code §203. As we noted previously, we believe the current regulations are applicable instead.

within that 225 feet, the Edwards' vehicle left the road nor is it clear how far away Honeywill was from the accident site when it ceased working on August 7, 1984. According to the deposition testimony of Honeywill's superintendent, the contractor stopped approximately one mile away from the accident site.[14] However, the superintendent qualified his statement and testified that in order to identify the exact location, he would need to review DOT's "straight line drawings"[15] By way of deposition testimony, DOT's project coordinator stated that on August 7, 1984, Honeywill stopped only four to five hundred feet from the work area covered on August 8, 1984.[16] However, he could not tell from the documents available at the deposition, whether new guiderail was being placed on Route 910 on August 7th as well as August 8th.[17] Honeywill's owner, Ransom Honeywill, in an interview with an investigator on January 3, 1985, stated he believed Honeywill was only 75 to 100 feet away from the accident site when it ceased working on August 7th.[18]

After a careful review of the pleadings, discovery, and affidavits before us, we are unable to conclude there are no material facts in question. Honeywill contracted with DOT to eliminate a potential hazard by erecting guiderail in the area where the Edwards' vehicle left the road. Under the contract, Honeywill had a duty to erect warning signs and other appropriate traffic control devices to warn of the potential hazards adjacent to and

---

[14] Deposition of Dennis Schavolt dated April 14, 1986 (Schavolt Dep.) at 85.

[15] Schavolt Dep. at 86.

[16] Deposition of Michael Graham, (Graham Dep.) dated April 16, 1986 at 60.

[17] Graham Dep. at 61.

[18] *See* Honeywill's Answer to Request for Production to Defendants from the Commonwealth of Pennsylvania.

within the construction site. Therefore, the questions of what Honeywill was doing and exactly where it was working on the day before the accident are material. As the answers to these questions are not apparent on the record before us, we believe the trial court erred in granting summary judgment. It may be that the trial court can free Honeywill from liability by way of a nonsuit, however such a determination is premature at this time.[19]

Accordingly, we reverse the order of the trial court granting summary judgment to Honeywill as to the claims of Yvonne Edwards and as to the cross-claims of Dingbats and DOT and remand to the trial court for further proceedings.

## ORDER

AND NOW, this 22nd day of August, 1988, the order of the Allegheny County Court of Common Pleas dated December 3, 1986, at No. GD 85-6222 granting summary judgment to Honeywill and Company is reversed and the matter is remanded for further proceedings.

Jurisdiction relinquished.

---

[19] In light of this result, we need not address DOT's contention that summary judgment is precluded by the indemnity agreement with Honeywill.

---

DISSENTING OPINION BY JUDGE DOYLE:

I dissent and would affirm the order of the trial court.