560 A.2d 893

**Martin DiBUONO and Lydia DiBuono, his wife and Carretta Trucking Co., Inc.**

v.

**A. BARLETTA & SONS, INC. et al.**

**Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1989.

Decided June 20, 1989.

Petition for Allowance of Appeal Denied Dec. 20, 1989.

2

James R. Moyles, Deputy Atty. Gen., Torts Litigation Section, Harrisburg, for appellant.

Joseph J. Ustynoski, Morton J. Gordon, Ustynoski, Sharkey & Marusak, Hazleton, for Martin DiBuono and Lydia DiBuono.

John D. Nardone, Thomas B. Helbig, Hourigan, Kluger, Spohrer & Quinn, P.C., Wilkes–Barre, for appellee, A. Barletta & Sons, Inc.

Howard A. Berman, Wilkes–Barre, for appellee.

Before CRAIG and McGINLEY (P.), JJ., and NARICK, Senior Judge.

4

NARICK, Senior Judge.

The Department of Transportation (Appellant) has appealed from the denial of its post-trial motions for either a judgment notwithstanding the verdict or a new trial following a jury verdict in favor of Appellees Martin [1] and Lydia DiBuono and A. Barletta & Sons, Inc.[2]

On October 31, 1980 at approximately 11:30 p.m., Martin DiBuono was seriously injured while traveling along Interstate 80 when the tractor-trailer he was driving flipped over a bridge parapet and fell 75 feet into the creek below the bridge. Interstate 80 was under construction at the time and the left lane was closed to traffic. Traffic was diverted to the right lane and, eventually, due to the positioning of the barrels used to channel traffic into the right-hand lane, to a portion of the right-hand berm. Appellee was traveling half in the right lane, half upon the berm as he approached the bridge over the Nescopeck Creek. The construction area was poorly lit. The berm abruptly ended at the bridge, which DiBuono did not see until he was upon it. He steered to the left to avoid the parapet and, although he managed to do so with the tractor, his trailer hit the parapet, causing the vehicle to flip. Appellee sustained two fractured leg bones, fractured ribs and a ruptured spleen which was surgically removed.

Following a jury trial, the jury entered a verdict (molded to $273,000) against Appellant alone. The jury absolved Appellant's contractor, Appellee Barletta, and various subcontractors from liability and found that Appellee was ten percent comparatively negligent.

Following the denial of its post-trial motions, Appellant appealed to this Court, where it raises six issues for our review. We shall address these issues in the order raised, being mindful that our scope of review is narrow: when considering a motion for judgment notwithstanding

1. Any reference herein to "Appellee" in the singular shall refer to Appellee Martin DiBuono.

2. Hereinafter referred to as "Appellee Barletta."

the verdict, we are concerned only with determining whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference to be drawn from the evidence and rejecting all unfavorable testimony and inferences. *Cabell v. City of Hazleton,* 96 Pa.Commonwealth Ct. 129, 506 A.2d 1001 (1986). Further, in reviewing the trial court's denial of Appellant's motion for a new trial, we will not disturb the court's ruling absent either an error of law which controlled the outcome of the case or an abuse of discretion where the ruling turns upon the weight of the evidence. *Id.*

■ Appellant first argues that the evidence adduced at trial was inconsistent with the verdict and that the trial court erred in failing to grant a judgment notwithstanding the verdict. In support of its argument, Appellant cites various passages from Appellee's cross-examination testimony. We have carefully reviewed the entirety of Appellee's testimony and find, when this testimony is viewed in the light most favorable to Appellee, that it contains ample support for the verdict entered.

■ Appellant's second argument is that Appellee's engineering expert, John Finn, lacked an adequate factual foundation for his opinion, because he did not know precisely what traffic control measures had been utilized at the accident site. From our review of Mr. Finn's testimony, however, it is clear that he based his opinion upon Appellee's description of the scene. When an expert has not personally observed the scene of an accident, he is nonetheless permitted to express his opinion regarding the cause of the accident if he answers hypothetical questions based upon assumptions which the jury would be warranted in finding as facts from the evidence presented. *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 278 A.2d 908 (1971).

Appellee testified that, as he approached the bridge, there were barrels to his left used to direct traffic to the right-hand lane. Several of these barrels were out of line and extended into the right-hand lane itself, causing him to use

a portion of the highway berm. Appellee further testified that there were no barrels to his right. It was precisely this lack of a channelizing device on the right-hand side which Mr. Finn found to be a cause of the accident. Mr. Finn was of the opinion that traffic could have been more safely routed across the bridge between the concrete barrier on the left and the bridge parapet on the right had there been a channelizing device on the driver's right to indicate that the berm would come to an end at the bridge parapet, which, itself, should have been marked with a reflective device.

During the course of his testimony, Mr. Finn referred to photographs of another construction site to illustrate what he considered to be proper traffic controls. Although the pictures he referred to were taken three years after the accident at issue, Mr. Finn specifically noted that the devices he recommended were all available at the time of the accident.[3]

■■ These photographs are the subject of the third issue Appellant raises. Appellant contends that the trial judge erred in admitting them because they were irrelevant and used to show antecedent negligence. The general rule is that it is within the sound discretion of the trial court judge to determine whether photographs will be admitted into evidence. *Lynch v. Metropolitan Life Insurance Co.*, 427 Pa. 418, 235 A.2d 406 (1967); *Smith v. Commonwealth*, 80 Pa.Commonwealth Ct. 117, 470 A.2d 1125 (1984). The court here determined that the photograph was admissible because it depicted a relevant object or scene.

In support of its argument, Appellant cites the general rule that evidence of subsequent remedial measures is inadmissible for the purpose of imputing antecedent negligence. *See Mendenhall v. Department of Transportation*, 113 Pa.Commonwealth Ct. 550, 537 A.2d 951 (1988). In

3. Specifically, Mr. Finn opined that barrels such as those that were placed in the left-hand lane at the time of the accident should have also been placed in the berm area to indicate a narrowing of the lane of travel before a driver encountered the bridge.

*Mendenhall,* the plaintiffs had attempted to introduce evidence that the Department of Transportation had erected additional signs warning of the dangerous curve where the plaintiff's decedent had been killed. In the case before us, the photographs to which the expert referred did not depict subsequent improvements to the accident site itself. Rather, Mr. Finn clearly testified that the photographs were of other construction sites, where different, and in the expert's opinion, safer traffic controls were utilized. The trial judge allowed the admission of only three of the proffered photographs, all of which depicted left-hand lane closures leading up to a bridge. The court determined that these photographs were relevant in that they depicted similar construction areas and were used for the purpose of illustrating the expert's version of the proper placement of traffic control devices. We cannot conclude that this determination constituted an abuse of the discretion granted to the trial court. *See, e.g., Lynch.*

■ Appellant next argues that the trial judge erred in failing to allow its proffered testimony regarding the absence of accidents at the construction site for the ninety-two days preceding the accident at issue. The court disallowed this testimony because there was evidence to indicate that there was a change in both the traffic pattern approaching the bridge and the lighting conditions shortly before the accident. The trial judge relied upon *Ringelheim v. Fidelity Trust Company of Pittsburgh,* 330 Pa. 69, 71, 198 A. 628, 629 (1938), which cogently summarizes the applicable rule:

Authorities are almost unanimous in holding that evidence of the occurrence of similar accidents is admissible for the purpose of establishing the character of the place where they occurred, their cause, and the imputation of notice, constructive at least, to the proprietors of the establishment, of the defect and the likelihood of injury.... [E]vidence of this nature is permissible only if it relates to other accidents happening at substantially the

same place and under the same conditions as those involved in the action on trial....

From our review of the evidence, both the testimony of Appellee's witness Joseph Kara and Appellant's own expert Michael Ryan, establish that the lighting and traffic pattern had been changed within two weeks of the accident. Accordingly, we must conclude that the trial court correctly withheld the evidence of lack of prior accidents from the jury's consideration.[4]

The fifth issue raised by Appellant is three-fold. The first two subparts concern the testimony of Appellee's medical expert, Dr. Stish. Appellant contends that the doctor's testimony exceeded the scope of his pre-trial report and, therefore, should have been excluded. Secondly, Appellant contends that the doctor's testimony was based upon mere speculation. Because we agree that Dr. Stish's testimony exceeded the fair scope of his report, resulting in unfair surprise to Appellant, we need not consider the second part of Appellant's argument, as it relates to the same testimony which must be excluded. The third subpart contains an allegation that Appellee's calculation of lost wage damages was speculative. We shall first address the medical testimony issue.

■ Over Appellant's objection at trial, Dr. Stish was permitted to testify regarding the possible consequences of a splenectomy, which include: deposits of tissue in the abdominal cavity, which could lead to intestinal problems; sepsis, or poisoning; increased susceptibility to an acute infection which could cause death within a matter of hours; and blood clots which could lodge in the brain (resulting in temporary or permanent paralysis) or heart (causing death).

Pa.R.C.P. No. 4003.5 governs the discovery of expert testimony and pertinently provides:

4. Although Appellant also argues that it could have presented evidence of a lack of accidents in the period after the traffic pattern was changed, it is apparent that this evidence was to have consisted merely of a summary of the average daily volume of traffic in the vicinity of the construction site without reference to time of day or direction of travel.

To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

Pa.R.C.P. No. 4003.5(c). The trial court found both that the doctor's testimony was not beyond the scope of his report and that the testimony was permissible because the doctor was not interrogated during discovery upon the subject of the consequences of the removal of Appellee's spleen. We must disagree on both counts.

Firstly, we have carefully scrutinized Dr. Stish's report of February 24, 1987 and find no mention therein of Appellee's ruptured spleen with the exception of the doctor's notation concerning Appellee's abdominal scar, which appears on the physical examination form attached to the report. Dr. Stish's report provides, in pertinent part, as follows:

I examined [Appellee] on October 16, 1986 and again on February 21, 1987, for his ability to drive a tractor trailer on long distance interstate truck hauls, including responsibility for loading and unloading. I have therefore used the Standard Physical Examination of Drivers form, attached, [in] accordance with the Federal Motor Carrier Safety Regulations with knowledge of his duties.

I have had access to his medical records to include all treatment that has been rendered to him for injuries sustained as a result of his accident.

He gives a history that he now suffers from pain in the left leg and ankle which is aggravated by an ordinary days [sic] work. In addition, he complains of pain in the left hip area. He cannot sit or stand too long without developing pain and aching in the left hip and left leg. He is forced to walk with a limp to the left side. He also

notices swelling of the left ankle which is persistent. At times he develops recurrent swelling of the left knee. He becomes extensively short of breath on exertion.

My physical findings are as on the attached examination form. I have reviewed this man's medical records and feel that the conditions which he has are a residual of injuries sustained as a result of his accident....

Because of the time which has elapsed since the accident, I feel that these conditions will remain. He will continue to be troubled with these symptoms indefinitely.

It is my opinion that this man will continue to be permanently limited in his ability to work. I do not believe that he will ever be able to drive on long hauls as he did before the accident. I am therefore unable to certify him for long distance, interstate driving.

Secondly, Appellee furnished Dr. Stish's report in response to interrogatories propounded upon him by Appellee Barletta. Appellee was asked to specify the subject matter on which any expert witness was expected to testify. In our view, from reading Dr. Stish's report, Appellant could have expected to prepare rebuttal evidence concerning Appellee's inability, due to *actual* residual injuries from the accident, to perform his pre-accident job as a long-haul truck driver. There was simply nothing in the doctor's report to alert Appellant that he intended to discuss *possible* future complications of a severe, even fatal, nature.

It is, of course, well established that the trial court has broad discretion in deciding whether or not to admit expert testimony and that an appellate court should not disturb that determination absent a clear abuse of discretion. *Painter v. Pennsylvania Electric Company,* 368 Pa.Superior Ct. 334, 534 A.2d 110 (1987) (*citing Klyman v. Southeastern Pennsylvania Transportation Authority,* 331 Pa. Superior Ct. 172, 480 A.2d 299 (1984)). As our Superior Court has noted, it is impossible to formulate a hard and fast rule for determining whether an expert has exceeded the fair scope of his report. *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.,* 348 Pa.Superi-

or Ct. 285, 502 A.2d 210 (1985). In *Wilkes–Barre,* the Superior Court summarized the considerations which govern such a determination:

The controlling principle which must guide us is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, 'the substance of the facts and opinions to which the expert is expected to testify' is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. See *Augustine v. Delgado,* 332 Pa.Super. [194] at 199, 481 A.2d [319] at 321 [ (1984) ] ('Pa.R.Civ.P. 4003.5 favors liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise'); *Martin v. Johns–Manville Corp.,* 322 Pa.Super. [348] at 358, 469 A.2d [655] at 659 [ (1983) ] ('[W]e have found experts' reports to be adequate ... when the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness.')

In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word 'fair.' The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Id.,* 348 Pa.Superior Ct. at 290, 502 A.2d at 212–13.

In this case, it is clear that Appellant was unfairly surprised by Dr. Stish's testimony regarding the complications of a splenectomy. Although the court instructed the jury that Dr. Stish was testifying regarding possibilities and not actualities, and it was brought out during cross-examination that Appellee did not exhibit any symptoms of those complications at the time of trial, Dr. Stish's direct testimony did indicate that these complications would be of continuing concern to Appellee. Because we are of the opinion that

the trial court abused its discretion in allowing this testimony, we must remand to that court for a new trial.[5]

The third subpart of Appellant's fifth issue concerns the nature of the evidence Appellee presented on the issue of lost future earnings, which Appellant contends was speculative. This evidence consisted of Appellee's testimony that he earned approximately $700 per week before the accident and $500 per week afterwards. On cross-examination, Appellant stated that he earned eleven cents per mile, so that the more he drove, the more he would earn. He was asked to identify a W–2 form covering his last six months of employment with Caretta Trucking, his employer at the time of the accident. The form listed wages in the amount of $11,604.46. During closing arguments, Appellee's counsel made reference to $40,000 per year as the salary which an over-the-road driver would earn. Upon Appellant's objection, the trial court reiterated for the jury's benefit the Appellee's testimony that he had earned $700 per week before the accident and $500 per week thereafter. ($700 per week translates into a yearly salary of $36,400). Appellee's counsel used the $40,000 per year figure as the basis for his suggested loss of future earnings of $402,000. While this figure was obviously based upon speculation, it is apparent that the jury, in awarding $300,000, was not persuaded by Appellee's counsel's projections. Any error occasioned by these closing statements will be cured by our remand for a new trial on damages. As for Appellee's testimony itself, we note that it was up to the jury, as fact-finder, to weigh his testimony on direct examination against his later admissions on cross-examination.[6]

5. In light of our determinations on the remaining issues raised by Appellant, which we find to be without merit, the sole issue of contention to be decided on remand is the question of damages. Accordingly, the new trial shall be limited to a determination of the amount of damages Appellant owes to Appellee. *See, e.g., Richardson v. LaBuz,* 81 Pa.Commonwealth Ct. 436, 474 A.2d 1181 (1984).

6. While Appellee's evidence regarding loss of future earnings was indeed sketchy, we do not believe that it amounted to mere speculation or guess as Appellant contends, according to our Supreme Court's

█ The final issue Appellant raises is that the trial judge erred in instructing the jury that the so-called "government contractor defense" applied to the facts of this case. This rule was first adopted by our Supreme Court in *Ference v. Booth and Flinn Co.*, 370 Pa. 400, 403, 88 A.2d 413, 414 (1952), wherein the Court stated: "where a contractor performs his work in accordance with the plans and specifications and is guilty of neither a negligent nor a willful tort, he is not liable for any damage that might result...." (Citation omitted.) In *Ference*, the Court affirmed the grant of a non-suit entered against the plaintiff who sued a contractor retained by the State Highway Department to construct a road. The plaintiff sought damages because of subsidence which rendered a road above the construction site impassible for his buses. The Court determined that the contractor could not be sued where no negligence in the performance of the contract was alleged. The Court reached the same result in *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A.2d 888 (1956), where the defendant corporation had been hired by the State Highway and Bridge Authority to construct a portion of an expressway. The plaintiff's ponds were polluted by dirt and silt emanating from the site of a fill the contractor had constructed in accordance with the specifications of its contract. Finally, in 1970, in its final pronouncement on the subject to date, the Supreme Court, noting the continuing validity of the rule of *Ference* and

summary of the following general principles in *Kaczkowski v. Bolubasz*, 491 Pa. 561, 567, 421 A.2d 1027, 1030 (1980):

The 'law does not require that proof in support of claims for damages or in support of compensation must conform to the standard of mathematical exactness.' *Lach v. Fleth*, 361 Pa. 340, 352, 64 A.2d 821 (1949). All that the law requires is that '(a) claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough.' *Stevenson v. Economy Bank of Ambridge*, 413 Pa. 442, 453–54, 197 A.2d 721, 727 (1964). See also, *Smail v. Flock*, 407 Pa. 148, 180 A.2d 59 (1962); *Getz v. Freed*, 377 Pa. 480, 105 A.2d 102 (1954). 'If the facts afford a reasonably fair basis for calculating how much plaintiff's entitled to, such evidence cannot be regarded as legally insufficient to support a claim for compensation.' *Western Show Co., Inc. v. Mix*, 308 Pa. 215, 162 A. 667 (1932).

*Valley Forge Gardens* fashioned an exception thereto where ultrahazardous activities, such as blasting, are involved. *See Lobozzo v. Adam Eidemiller, Inc.,* 437 Pa. 360, 263 A.2d 432 (1970).

Appellant does not argue that the rule is no longer viable,[7] but, rather, contends that Appellee Barletta has waived its right to this defense by having signed a contract with Appellant which provided that "[f]inal responsibility for the protection of the public and the construction personnel shall rest with the contractor." Further, Appellant argues, based upon its regulations, that the specifications it established were designed to constitute the minimum protection necessary and that the contractor was responsible for adding additional protective devices where hazardous conditions warranted such additional protection.

What Appellant fails to mention, however, is the fact that it required Appellee Barletta to obtain its prior approval before making any changes to established traffic patterns. Indeed, on this particular project, it is undisputed that the traffic control pattern leading to the bridge over the Nescopeck Creek was changed, *at Appellant's express direction,* just two weeks prior to the accident. Appellant itself designed the new traffic pattern, which, by the admission of its engineer, Mr. Ryan, exceeded its own minimum requirements. Further, Mr. Ryan testified that Appellee Barletta had implemented the new traffic pattern as directed and that the new pattern, as implemented, complied with Appellant's specifications.

Appellant cites its regulations,[8] codified in Chapter 203 of Title 67 of the Pa.Code, as determinative of a contractor's liability. Specifically, 67 Pa.Code § 203.2 provided:

7. On this point, *see* the thorough discussion of its continuing viability in *Brown v. Caterpillar Tractor Company,* 696 F.2d 246 (3d Cir.1982). Although we are not bound by the federal court's reasoning, we find it persuasive. *See also Mackey v. Maremont Corp.,* 350 Pa.Superior Ct. 415, 504 A.2d 908 (1986).

8. Appellant's brief contains quotations from its present regulations, which became effective January 1, 1984. Obviously, these regulations were not in effect at the time Appellant contracted with Appellee

The principles and standards set forth in this subchapter are aimed at the protection of the public and the construction personnel while maintaining the good will of the public by minimizing their inconvenience. It is emphasized that the standards prescribed in this subchapter are the minimum for typical situations and that the contractor shall supply additional protection when special problems or complexities exist.

Similarly, 67 Pa.Code § 203.3 provided, in part:

Since it is not possible to prescribe detailed application standards for all situations that may arise, minimum standards for typical situations are illustrated. Engineering, judgment, and discretion shall be exercised in selecting the best devices and application that will be adaptable to a specific situation using the general policies prescribed in this subchapter.

These sections clearly highlight the reason for the establishment of minimum safety standards: because Appellant cannot prescribe specific standards for each of the many work sites throughout the Commonwealth, it has adopted general provisions to govern typical applications. The rationale simply does not apply to the facts of this case, where it is undisputed that Appellant not only had specific knowledge of the traffic pattern in place at this construction site, but, in addition, took affirmative steps to correct and improve a pattern that was not effective by directing its contractor to re-align the traffic control devices.

Appellant cites this Court's decision in *Edwards v. Department of Transportation,* 119 Pa.Commonwealth Ct. 116, 546 A.2d 1291 (1988), as support for its argument that a contractor has the final responsibility for protecting the public under its regulations. In *Edwards,* we overturned a grant of summary judgment in a contractor's favor where there were unresolved factual issues concerning its duty to

Barletta to perform the construction work in the vicinity of the accident. Our independent research has led us to the regulatory sections in effect at the time of the contract and the quotations in the opinion are to those sections.

erect warning signs in the area where it was working, where the accident which was the subject of that lawsuit occurred. *Edwards* is procedurally and factually distinguishable from the case at bar. The facts, although not established because the trial court had granted the motion for summary judgment, indicated that the contractor in *Edwards* had failed to erect *any* warning devices in the vicinity of the accident. Such a situation is far different from that here at issue, where Appellant directed Appellee Barletta to place certain traffic control devices in a designated configuration, and Appellee Barletta precisely complied with those instructions.

Because Appellant maintained strict control over Appellee Barletta's performance of its contractual obligations and Appellee Barletta performed its work in precise accordance with Appellant's specifications, we hold that the trial judge did not err in instructing the jury regarding the applicability of the government contractor defense.[9]

In summary, we conclude that that portion of the trial court's order denying Appellant's motion for a new trial due to the prejudicial testimony of Dr. Stish must be reversed and a new trial granted on the issue of damages. In all other respects, the trial court's order is affirmed.

## ORDER

AND NOW, this 20th day of June, 1989, the order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby affirmed in part and reversed in part and a new trial limited to the issue of damages is granted to the Commonwealth of Pennsylvania, Department

**9.** The jury did not find that Appellee Barletta was negligent. Because we have determined that its finding was based upon proper instruction from the trial court judge, Appellee Barletta will not be required to participate as a party in the new trial. *See Richardson,* 81 Pa.Commonwealth Ct. 447, 474 A.2d at 1191: "[A] defendant who has been exculpated from any negligence should not be subject to another trial." (Citation omitted.)

of Transportation.   A Barletta & Sons, Inc. shall not be named as a party in the new trial.

Jurisdiction relinquished.

McGINLEY, J., dissents.