**Bracken v. Malik**

*Douglas L. Price,* for plaintiff.
*James W. Kraus,* for defendants.

NICKLEACH, *J.,* April 19, 2005—This is a medical malpractice action brought on behalf of James Morvik, now deceased, against Khalid Malik M.D. and Malik Medical Associates. The case was commenced by Jeffrey Bracken, attorney-in-fact for Morvik. After Morvik died on September 21, 2000, Bracken became special executor of the estate of James Morvik. By court order, he was substituted for the original plaintiff as executor of Morvik's estate. After a jury trial on September 21, 2004, the jury returned a verdict in favor of plaintiff and against defendants in the amount of $250,000. Presently before this court for disposition is defendants' motion for post-trial relief, new trial and/or entry of judgment.

The essence of plaintiff's case was that defendants failed to properly treat and monitor Morvik's condition, including stenosis of his left and right carotid artery, resulting in total occlusion of Morvik's left carotid artery. Defendants' failure to properly treat and monitor the stenosis in Morvik's arteries ultimately resulted in Morvik suffering a debilitating stroke (a left cerebral vascular accident) on August 29, 1997. As a result of this stroke, Morvik was unable to walk, dress, bathe, toilet, eat or undertake other activities of daily living without assistance and required round-the-clock supervision and care. He was essentially confined to his house for the remainder of his life.

The trial of this case began on September 21, 2004. Just before opening arguments, defendants decided to admit liability and try the case solely on the issue of plaintiff's damages. The parties entered into a stipulation of liability. Among other things, the stipulation stated, "[P]laintiff will not have to prove that Dr. Malik was negligent and that such negligence was the cause of Mr. Morvik's stroke." Stipulation, paragraph 5. The stipulation also stated that "[t]he parties will present *evidence regarding Mr. Morvik's condition before and after sustaining the stroke, as well as the effect that it had on his life.*" *Id.* at para. 8. (emphasis added)[1]

Plaintiff presented just five witnesses at trial: Alan Lerner M.D. (a neurologist); Jeffrey Bracken (Morvik's friend, housemate and caretaker); Wendell Morvik (Morvik's brother); Rose Virostek (Morvik's sister); and

---

1. There was no Wrongful Death Act claim, so plaintiff was limited to recovering damages suffered by Morvik during the three years he lived following the stroke.

Mindy Bracken (Bracken's wife and Morvik's friend, housemate and caretaker).

Defendants complain that several errors occurred at trial. First, defendants argue that Dr. Lerner was erroneously permitted to testify outside the scope of his expert report in violation of Pa.R.C.P. 212.2(a)(5) and Pa.R.C.P. 4003.5(c). Defendants also argue that the testimony of Dr. Lerner was unnecessary and duplicative.

In addition, defendants claim that the court erred by allowing photographs of Morvik taken six or seven years prior to his stroke to be admitted at trial. Defendants further argue that the court gave insufficient curative instructions to the jury regarding various statements in plaintiff's closing argument about the value of Morvik's life. Finally, defendants seek remittitur of the jury's $250,000 award, arguing that it was excessive, was not supported by the evidence and was the result of various alleged errors outlined above which fatally prejudiced the jury. Alternatively, defendants seek a new trial.

We will first address defendants' claim that the court erred by allowing Dr. Lerner to testify. The main thrust of defendants' argument is that Dr. Lerner's testimony went outside the scope of his expert report in violation of Pa.R.C.P. 212.2(a)(5)[2] and Pa.R.C.P. 4003.5(c).[3] The court does not agree.

---

2. Pa. R.C.P. 212.2(a)(5) requires that a party's pretrial statement contain "a copy of the written report, or answer to written interrogatory consistent with Rule 4003.5, containing the opinion and the basis for the opinion of any person who may be called as an expert witness." Pa.R.C.P. 212.2(a)(5).

3. Pa.R.C.P. 4003.5(c) states, "To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under subdivision (a)(1) or (2) of this rule, *the direct testi-*

Dr. Lerner's written report, which took the form of a letter addressed to plaintiff's attorney, admittedly was quite short and largely directed to the issue of defendants' negligence. However, the report made it plain that Dr. Lerner had reviewed certain medical records of Morvik and was familiar with the nature and effects of the stroke suffered by Morvik. Specifically, the report said:

"I have reviewed Dr. Khalid's office records, the inpatient records of Mr. Morvik and depositions of Dr. Khalid and Louann Heilman. As the details of the case are familiar to you, I will only briefly summarize them. Mr. James Morvik had an incapacitating stroke involving the left middle cerebral artery distribution on August 30, 1997. The patient eventually died due to complications of his stroke."

The above-quoted language put defendants on notice that Dr. Lerner would testify concerning the information contained in Morvik's medical records and his "incapacitating stroke involving the left middle cerebral artery." Given this specific language, as well as the fact that defendants decided only at the last minute to admit liability, the court did not err when it allowed Dr. Lerner to testify about the nature and the effects of Morvik's stroke and to opine that the physical and mental difficulties suffered by Morvik were the consequences of that stroke.

---

*mony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the . . . separate report* or supplement thereto. However, the expert shall not be prevented from testifying as to the facts or opinions on matters which the expert has not been interrogated in the discovery proceedings." Pa.R.C.P. 4003.5(c). (emphasis added)

Defendants themselves note that other witnesses testified to the difficulties Morvik had with such things as speaking, dressing, walking and so on. These other witnesses, like Dr. Lerner, further testified that Morvik was depressed and frustrated with his inability to communicate. Defendants do not deny these damages nor do they deny that they were a direct result of the stroke.[4] Although defendants conceded liability, plaintiff was still entitled to educate the jury about the mechanics of Morvik's stroke, and to have his expert explain that Morvik's subsequent physical and mental difficulties were a direct result of that stroke.

Furthermore, even if Dr. Lerner's testimony did exceed the scope of his expert report, the court clearly had the discretion and authority to limit his testimony rather than to totally preclude Dr. Lerner from testifying.[5] The court instructed counsel in chambers that Dr. Lerner's testimony was to be short and limited to explaining what happened when a person, and in particular, Morvik, suffered the type of stroke which befell Morvik. Transcript of proceeding in chambers September 21, 2004, pp. 16-19. Dr. Lerner's testimony was brief and focused on the

---

4. The only thing defendants did contest was Dr. Lerner's and Jeffrey Bracken's testimony that Morvik was incontinent, and defendants' counsel grilled both Dr. Lerner and Bracken quite effectively on that issue.

5. Pa.R.C.P. 212(c) states, "Where the trial judge determines *that unfair prejudice shall occur as the result of noncompliance with subdivisions (a) and (b), the trial judge shall grant appropriate relief which may include* (1) the preclusion or *limitation of the testimony of* (ii) any witness whose identity is not disclosed in the pretrial statement or *(ii) any expert witness whose opinions have not been set forth in the report submitted with the pretrial statement or otherwise specifically referred to in the pretrial statement, consistent with Rule 4003.5* . . . ."

particular kind of stroke Morvik suffered, and, additionally, on how the stroke affected Morvik's speech, movement, body functions and mental health.[6]

"The question of whether the permissible limits of testimony under the rule have been violated is to be determined on a case-by-case basis, and the essence of the inquiry is fairness. . . . The fairness of the court's decision is gauged by whether the opposing party has sufficient notice of the expert's opinion to fashion a meaningful response." *Burton-Lister v. Siegel, Sivitz and Lebed Associates,* 798 A.2d 231, 241 (Pa. Super. 2002), *appeal denied,* 570 Pa. 680, 808 A.2d 568 (2002). (citations omitted) Defendants did not present any witnesses themselves at trial. In light of this, the court fails to comprehend what "meaningful response" defendants might have made to Dr. Lerner's testimony had they known he would testify.

In the same vein, defendants have failed to explain how they were unfairly prejudiced or unfairly surprised by Dr. Lerner's brief testimony. As the Superior Court noted in *Burton-Lister,* "We will not find error in the admission of testimony that the opposing party had notice of or was not prejudiced by." *Id.* at 242. (citations and quotations omitted) For all these reasons, the court finds defendants' claim that the court erred in allowing Dr. Lerner to testify to be without merit. Defendants' request for post-trial relief on that basis is denied.

We next address the issue of certain remarks made by plaintiff's counsel in closing arguments referring to the

---

6. As to the defendants' claim that the testimony was unnecessary, irrelevant and duplicative of other witnesses' testimony, the court ruled at trial, and again finds here, that this argument is without merit.

value of Morvik's life.[7] According to defendants, these remarks suggested that plaintiff was entitled to Wrongful Death Act damages and unfairly prejudiced defendants. Viewing the closing arguments and the court's subsequent charge to the jury in their totality, the court finds defendants' claim of error to be without merit.

First, defendants' counsel clearly stated in his closing, "There is no claim for wrongful death or that anything that Dr. Malik did caused the death of Mr. Morvik." T.T. at 91. Defendants' counsel also stated, "[W]e respect the law, which in this case says that Mr. Morvik's pain and suffering should be compensated, and, while he was living, his loss of enjoyment of life should be compensated, but those other things should not. And it's part of your duty to divide those out . . . ." *Id.* at 92.

After plaintiff's closing argument, defendants objected to plaintiff's remarks about the value of Morvik's life and sought a curative instruction from the court. In response to defendants' request, this court instructed the jury as follows:

"Ladies and gentlemen, there was some mention in Mr. Price's closing arguments that you have to decide what his life was worth. I want to point out, and you to bear in mind, Mr. Morvik's death is not an item of dam-

---

7. Some of the remarks objected to were: "Is it ever enough time to judge what the value of life of a person is? Trial transcript, p. 93; "This is a case of Jim Morvik's life." *Id.* at 96; "you are the ones who have to judge what is the value of Jim Morvik's life." *Id.* at 97; "That's what a life is worth." *Id.* at 98; "It's whatever the 12 of you put together and come up with and come out here and say, in Armstrong County a life is worth this much." *Id.* at 100; "Because that life was taken away, you are going to have to tell what his life was worth." *Id.* at 101.

ages in this case. There is no allegation that Dr. Malik caused Mr. Morvik's death, nor is that admitted here.

"What is at issue are the noneconomic damages that Mr. Morvik has from the date of his stroke until the date of his death, and I will define those and clarify those later on. But the death itself is not an item for you . . . to consider as far as damages." *Id.* at 106.

Later on in the jury charge, the court explained the nature of the damages the jury could award at great length:

"The plaintiff, Mr. Bracken, as a special executor of Mr. Morvik's estate, claims damages under Pennsylvania Survival Act. Under this act, Mr. Bracken, on behalf of Mr. Morvik's estate, is entitled to be awarded an amount that you believe will fairly and adequately compensate for the noneconomic loss Mr. Morvik sustained from the moment of his stroke on August 29, 1997, until his death on September 21, 2000.

"Bear in mind, as I said earlier, Mr. Morvik's death is not an item of damage here. There is no allegation that Dr. Malik caused Mr. Morvik's death, nor is that fact admitted in this case. There are three items that make up a damage award for noneconomic loss in this case: First, is pain and suffering; second, is embarrassment and humiliation; and third, is the loss of ability to enjoy the pleasures of life.

"The first item to be considered in plaintiff's claim for damages for the noneconomic loss is pain and suffering. You are instructed that the plaintiff is entitled to be fairly and adequately compensated for all physical pain, mental anguish, discomfort, inconvenience, and distress that you find Mr. Morvik endured from the time of his stroke on August 29, 1997, until his death on September 21, 2000.

"The second item that goes to make up noneconomic loss is embarrassment and humiliation. The plaintiff is entitled to fairly and adequately be compensated for such embarrassment and humiliation as you believe Mr. Morvik endured, again from the time of his stroke until the time of his death.

"The third item is loss of enjoyment of life. Plaintiff is entitled to be fairly and adequately compensated for the loss of Mr. Morvik's ability to enjoy any of the pleasures of life as a result of his stroke from the time of his stroke until his death." *Id.* at 119-21.

Given the above instructions, the court does not see how the nature of damages awardable in this case could have been made more clear. Moreover, after the court gave its curative remarks and its jury charge, the court asked counsel if there were any objections, modifications or additions to them. *Id.* at 127. Defendants' counsel failed to object to the court's curative instructions or charge regarding damages. As such, any such claim of error has now been waived.

Finally, the court will address defendants' claim that the court erred in allowing certain photographs of Morvik to be admitted into evidence to demonstrate what Morvik looked like prior to his stroke.[8] Defendants argue that because the photographs were taken six or seven years before Morvik suffered his stroke, the photographic evidence was unreliable and misleading, and should not have been admitted.

---

8. The three photographs at issue, plaintiff's exhibits 1, 2 and 3, all showed Morvik at home with his dog. Exhibit 1 was taken in 1990, and exhibits 2 and 3 approximately a year after that.

The photographs in question were introduced during the testimony of Jeffrey Bracken, Morvik's nephew, caretaker and housemate. On cross-examination of Bracken, defendants' counsel elicited testimony that the photographs had been taken about six or seven years before Morvik suffered his stroke. Bracken also admitted during cross-examination that between 1990 and 1997, Morvik suffered a heart attack, underwent medical procedures for the heart attack, and became unable to work as a result of his heart and back problems. Defendants thus had ample opportunity to suggest to the jury that the photographs might not represent the way Morvik looked just prior to his stroke.

On the other hand, Bracken testified on redirect that Morvik's heart and back problems did not prevent Morvik from hunting, fishing, cutting grass or doing things for his neighbors prior to his stroke. The jury could reasonably infer from that testimony that Morvik's appearance had not changed any more than might normally be expected over a passage of six or seven years, and that Morvik continued to be a vital and active person until the stroke occurred.

Generally, it is within the sound discretion of the court to determine whether or not photographs will be admitted into evidence. *DiBuono v. A. Barletta & Sons Inc.*, 127 Pa. Commw. 1, 6, 560 A.2d 893, 896 (1989). Pa.R.E. 403 does state that otherwise relevant "evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Pa.R.E.403. However, the court did not find that to be necessary in this case.

The jury heard testimony which emphasized that the photographs portraying Morvik in the years preceding

his stroke had been taken six and seven years before the stroke. They were also informed of the back and heart problems suffered by Morvik between 1990 and 1997. This information helped the jury decide what weight they wished to give those photographs. That does not mean the photographs were not properly admissible As the Supreme Court noted in *Beardslee v. Columbia Township,* 188 Pa. 496, 502, 41 A. 617, 618 (1898):

"[P]hotographs . . . taken at or near to the time, are not always obtainable, and, bearing in mind the object sought,—the assisting of the jury, . . . to judge the conduct of the parties with reference to the issue raised,— the only practicable rule would seem to be that the changes must not be such as to destroy the substantial identity, and that the changes, whatever they are, must be carefully pointed out and brought to the jury's attention. . . . With these safeguards the subject must be left largely to the discretion of the trial judge." *Id.*

Given the above reasoning, the court finds defendants' claim that the photographs were erroneously admitted to have no merit.

Finally, the court addresses defendants' claim that the jury's verdict of $250,000 was excessive and warrants the granting of remittitur. The court does not find the jury award to be excessive at all. The evidence adduced at trial showed that prior to suffering a stroke, Morvik was an active, vital person who traveled, hunted, and fished as often as he could. Following the stroke, Morvik became virtually housebound, required 24-hour a day supervision and assistance with all his daily activities, could hardly communicate with others, and was extremely frustrated and depressed by his stroke-induced limitations. He lived this way for three years. Given these

facts, the jury's verdict was entirely appropriate, and the court will not grant remittitur or a new trial. Defendants' motion for post-trial relief is denied in its entirety.

An appropriate order will be entered.

### ORDER

And now, April 19, 2005, it is hereby ordered, adjudged and decreed that defendants' motion for post-trial relief be denied.